UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

ANN BARCLAY deWET, and
LAURENCE E.T. SMITH, *in their capacities*
*as personal representatives of the Estate of*
ANN TIERNEY SMITH,

       Plaintiffs,

v.                                 CIVIL ACTION NO.  1:21-cv-00328

G. RUSSELL ROLLYSON, JR.,
*in his official and individual capacities*,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending are Defendant Deputy Commissioner G. Russell Rollyson, Jr.'s Motion for Summary Judgment [ECF 47], and Plaintiffs Ann Barclay deWet and Laurence E.T. Smith's Motion for Summary Judgment [ECF 51], both filed September 22, 2023.

This case deals with the issuance of a tax deed to a lien purchaser, Ed Boer, by G. Russell Rollyson, Deputy Commissioner of Delinquent and Non-entered Lands in the West Virginia Auditor's Office ("Deputy Commissioner Rollyson"). The tax deed covered property owned by Ann Tierney Smith, now deceased, following her nonpayment of taxes during an extended illness. After this case was filed, Plaintiffs arrived at a settlement with Mr. Boer. The settlement restored the subject property to Plaintiffs.

Plaintiffs continue, however, to seek a damage award against Deputy Commissioner Rollyson individually, arising out of his sale of the subject property to Mr. Boer. The damages include "but [are] not limited to: 1) a $400,000 purchase contract on the [subject]

Property that fell apart only after the purchaser informed Plaintiffs of the clouded title; 2) the interest, fees and a premium that Ms. Smith had to pay to . . . Ed Boer . . . to recover clear title to the Bluefield Property . . . ; and 3) legal fees that at this point exceed $80,000." [ECF 65 at 11-12 (proposed pretrial order)].

        In commenting upon an excerpt from *Jones v. Flowers* -- the most recent Supreme Court decision on the process due when the state conveys tax deeds, the acknowledged Dean of West Virginia property law -- who has written and spoken widely on the subject -- stated as follows:

> This statement [in *Jones*] clearly recognizes *a case specific test*, and given the fact the West Virginia statute "assigns" this duty to the tax lien purchaser, the importance of *the Court's oversight on a case by case basis is apparent*.

John W. Fisher, II, *Delinquent and Non-Entered Lands and Due Process*, 115 W. Va. L. Rev. 43, 78 (2012) (citing *Jones v. Flowers*, 547 U.S. 220, 234 (2006) (emphasis added) (former Dean Fisher commenting on the statement in *Jones* as follows: "We think there were several reasonable steps the State could have taken. What steps are reasonable in response to new information depends upon what the new information reveals.")).

        Dean Fisher was right. The decision in *Jones* is replete with similar equivocation grounded in, on the one hand, assuring due process is satisfied when property is sold for delinquent taxes and, on the other, not dictating to the several states, their legislators, and officers how their statutory sale schemes ought to be drafted and the specific actions they must take when confronted with notice failures. *See*, *e.g.*, *id.* at 225 ("We hold that when mailed notice of a tax sale is returned unclaimed, the State must take additional *reasonable steps* to attempt to provide notice to the property owner before selling his property, *if it is practicable to do so*." (emphasis added)); *id.* at 227 ("That is a *new wrinkle*, and we have explained that the '*notice required will vary with*

*circumstances and conditions*.'") (cleaned up) (emphasis added); *id.* ("The question presented is whether such knowledge on the government's part is a 'circumstance and condition' that varies the 'notice required.'"); *id.* at 234 ("But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide *adequate notice* of the impending taking."); *id.* at 234 ("[i]t is not our responsibility to prescribe the form of service that the [government] should adopt . . . .").

It is one thing to restore property -- even at a cost -- to a former owner who lost it through due process defects in tax sale mechanics. The Court is prepared to say, on these facts, that Deputy Commissioner Rollyson should have required more of Mr. Boer and, indeed, that his failure to do so worked a due process violation upon Ms. Smith. But it is another matter entirely to hold Deputy Commissioner Rollyson personally liable for damages in a setting where the law governing his actions has so much play in the joints, and where the due process rulebook is necessarily developed on an ad hoc basis. For that reason, as more fully discussed within, Deputy Commissioner Rollyson is entitled to qualified immunity.

## I.

On June 8, 2021, Ms. Smith instituted this action.[1] Plaintiffs allege Deputy Commissioner Rollyson, in both his official and individual capacity, failed to provide Ms. Smith proper notice prior to issuing a tax deed to Mr. Boer, thus visiting upon her an unconstitutional property deprivation in violation of the Fourteenth Amendment. Plaintiffs seek actual damages, costs, and reasonable attorney fees pursuant to 42 U.S.C. § 1983, as well as any prospective

---

[1] Ms. Smith passed on December 27, 2021. On January 4, 2022, a suggestion of death was filed. [ECF 17]. On April 4, 2022, Ann Barclay deWet and Laurence E.T. Smith moved for substitution. [ECF 20]. On August 4, 2022, the motion was granted by Agreed Order [ECF 21].

injunctive relief the Court deems "just, proper and appropriate." [ECF  1 at 17].

Ms. Smith inherited two parcels in Mercer County, namely, (1) a Class II property at 625 Mountain View Avenue in Bluefield ("Property"), and (2) an adjoining lot identified as LOT UNION ("Union Lot") (Parcel ID 03 27004800000000). [*Id.* ¶ 6]. She resided in Washington, D.C., for most of her life. She then moved to the Property in 1996. [*Id.* ¶¶ 5, 8]. Her prior address was 4343 Westover NW Place, Washington, D.C., 20016. [*Id.* ¶ 5 ("Washington Address")]. While residing at the Property, she used PO Box 370, Bluefield, West Virginia, 24701 ("Bluefield PO Box"). In 2007, she moved to Kentucky to undergo cancer treatment. [*Id.* ¶ 9]. Her Kentucky address was 441 Escondida Road, Paris, Kentucky, 40361. [*Id.* ¶ 35 ("Former Kentucky Address")]. During this time, Ms. Smith returned to the Property intermittently, but never there resided again. [*Id.* ¶ 10]. In November 2016, Ms. Smith suffered a stroke and never returned to the Property. [*Id.* ¶ 11, ECF 52 at 2]. She moved in with her daughter and surrendered the Bluefield PO Box. [ECF 1 ¶ 12, 36]. It was not until December 12, 2017, that her mailing address for the Property and the Union Lot on file with Mercer County was changed from the Bluefield PO Box to yet another location, namely, PO Box 290, Paris, Kentucky, 40362. [*Id.* ¶ 18 ("Kentucky PO Box")].

Following her stroke, Ms. Smith had trouble handling her finances. The 2016 Property taxes were not paid. [*Id.* ¶ 15]. On November 6, 2017, Ed Boer purchased the tax lien at the Sheriff's sale for $8,214.12 and received a Certificate of Sale. [*Id.* ¶ 17]. On October 29, 2018, Mr. Boer provided Deputy Commissioner Rollyson with four addresses to send the Notices to Redeem required by statute: (1) the Property; (2) the Bluefield PO Box; (3) 509 9th Street, NW, Washington, D.C., 20004 ("Washington Alternate Address"), and (4) the Washington Address. [*Id.* ¶ 27]. Importantly, at the time Mr. Boer supplied these addresses, the correct mailing address

for Ms. Smith -- namely the Kentucky PO Box -- was spread on the public record in the Mercer County Clerk's Office. It had been so recorded for nearly a year.  Mr. Boer did not provide it to Deputy Commissioner Rollyson. And Deputy Commissioner Rollyson did not require an updated search from Mr. Boer of that central, county repository.  Deputy Commissioner Rollyson then mailed the Notices to Redeem via certified mail to the four addresses. Notices by first class mail were also sent to the Property and the Bluefield PO Box. [*Id.* ¶¶ 30, 31]. The Notice to Redeem mailed to the Property was not addressed to "Occupant." [*Id.* ¶ 31]. All of these efforts were, of course, fruitless in providing actual notice, inasmuch as Ms. Smith was then residing in Kentucky (and easily reachable through her mailing address to the Kentucky PO box on file in the Mercer County Clerk's Office had Mr. Boer looked anew or had Deputy Commissioner Rollyson required him to do so).

       As one would expect, the Notices to Redeem sent via certified mail were returned as undeliverable or unclaimed; those mailed via first class mail were returned as either "Return to Sender Unclaimed Unable to Forward" or "Return to Sender Not Deliverable as Addresses Unable to Forward." [*Id.* ¶ 32]. Thereafter, in January, February, and April of 2019, Deputy Commissioner Rollyson sent Mr. Boer four individual letters stating "[t]he above listed notice to redeem was mailed, at your instruction and which was return[ed] as undeliverable, unclaimed, or refused." [ECF 1-1 at 8, ECF 47-7]. The letter also advised that personal service was now necessary under governing law. [*Id.*]. One might thus expect at this point that Mr. Boer -- in reformulating his search for a deliverable address for Ms. Smith -- would have contacted the Mercer County Clerk's Office to search for the updated address, namely, the Kentucky PO Box, that was there listed for a year and a half by this point. He did not do so. He instead provided to Deputy Commissioner Rollyson (1) the Property's physical address, (2) the Washington Address, (3) the Washington

Alternate Address, and (4) the Former Kentucky Address. [ECF 1 ¶ 35]. Importantly, as noted above, Mr. Boer knew in responding to Deputy Commissioner Rollyson that the first three "new" addresses he supplied were ineffective, as the earlier mailings thereto were previously returned. Deputy Commissioner Rollyson then used these three bad addresses, and the single new (and bad) address, for the next step described below.

On February 27, April 8, and May 8, 2019, a process agent attempted service upon Ms. Smith at the Washington Address and the Washington Alternate Address [*Id.* ¶ 38]. He posted a notice on the outside of the buildings there located but did not leave the actual Notice to Redeem. [*Id.*]. On March 7, 2019, a process agent additionally attempted unsuccessfully to serve Ms. Smith at the Former Kentucky Address. [*Id.* ¶ 37].

Mr. Boer did not attempt, and Deputy Commissioner Rollyson did not require, newspaper publication of the Notice to Redeem. [*Id.* ¶ 39]. Again, at this point, Ms. Smith's Kentucky PO Box had been on file with the Mercer County Clerk's Office for more than a year. [*Id.* ¶ 18]. Nevertheless, on April 1, 2019, Deputy Commissioner Rollyson granted Mr. Boer a tax deed to the Property. The tax deed, which was ultimately voided due to the settlement, was recorded on June 12, 2019.

Just seven months later, on November 4, 2019, Mr. Boer purchased the tax lien on the Union Lot. [*Id.* ¶ 48]. In January 2021, Deputy Commissioner Rollyson issued Notices to Redeem (1) via certified mail to the Kentucky PO Box and 5080 Lexington Road, Paris, Kentucky, 40361 ("Current Kentucky Address"), (2) via process server to the Washington Alternate Address and the Current Kentucky Address, and (3) via publication in the *Bluefield Daily Telegraph* in accordance with the Notice to Redeem Form completed by Mr. Boer. [*Id.* ¶ 49, ECF 51-10]. Ms. Smith received the Notices to Redeem arriving by certified mail at the Kentucky PO Box and by

6

process server at the Current Kentucky Address, after which she redeemed the Union Lot. [*Id.* ¶ 52, 54, 56].

After Ms. Smith instituted this action, as noted, she settled her claims against Mr. Boer [ECF 15]. Thus, Count II against Deputy Commissioner Rollyson alone remains. Count II pleads the subject due process claim.   The parties dispute whether Deputy Commissioner Rollyson's issuance of the tax deed worked a due process violation when (1) he did not send a copy of the Notice to Redeem to the Property addressed to "Occupant", (2) he did not publish the Notice to Redeem, and (3) without first searching the public record or requiring Mr. Boer to do so, he caused personal service to occur at addresses where the Notices to Redeem sent by certified mail were already returned as undeliverable or unclaimed.

Respecting the official capacity claim, Deputy Commissioner Rollyson asserts he is not a "person" pursuant to 42 U.S.C. § 1983. Respecting the individual capacity claim, Deputy Commissioner contends he complied with his statutory duties in service of due process. Deputy Commissioner Rollyson also notes *West Virginia Code* section 11A-4-4(a) provides an exclusive remedy in situations such as this, requiring an action between the putative purchaser and persons entitled to notice. Finally, Deputy Commissioner contends he is entitled to qualified immunity.

Plaintiffs generally reply, *inter alia*, Deputy Commissioner Rollyson failed to take reasonably available measures to achieve notice, inasmuch as he (1) posted notices at addresses known to be undeliverable, (2) did not require the Mercer County Clerk's Office records be checked for Ms. Smith's correct address, (3) failed to undertake required efforts to locate Ms. Smith's correct address, and (4) delivered the deed knowing Ms. Smith had not received proper notice.

## II.

### *A.    Governing Standard*

*Federal Rule of Civil Procedure* 56 provides that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 246 (1986). "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)). The Court must "view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal quotation marks and citation omitted); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

When faced with cross-motions for summary judgment, the Court applies the above standard and must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). "The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *see Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate" Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.

**B.**     *42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 governs actions against state officers arising out of their deprivations of constitutional rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983.

### 1. Official Capacity

"'[T]he Supreme Court has made clear that 'neither a State nor its officials acting in their official capacities are "persons" under § 1983.'" *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 258 (4th Cir. 2022) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). "[N]either States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief." *Fauconier v. Clarke*, 966 F.3d 265, 279–80 (4th Cir. 2020) (citing *Will*, 491 U.S. at 71); *Hafer v. Melo*, 502 U.S. 21, 27 (1991). However, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71, n. 10 (1989) (citing *Kentucky v. Graham,* 473 U.S. 159, 167, n. 14 (1985)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 693 (S.D.W. Va. 2014) (Johnston, J.)); *Wilson v. United States*, 332 F.R.D. 505, 517 (S.D.W. Va. 2019) (Chambers, J.).

It is additionally well settled that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S.

Const. amend. XI. "'[T]he Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law.'" *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)); *Ex parte Young*, 209 U.S. 123 (1908).

Under *Ex parte Young*, private citizens may sue state officials in their official capacities in federal court to obtain prospective relief from ongoing violations of federal law. *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018), *aff'd*, 589 U.S. 248, 140 (2020) (citing *Frank v. Ross*, 313 F.3d 184, 197 (4th Cir. 2002)). The *Ex parte Young* exception "'permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment.'" *Biggs v. N. Carolina Dep't of Pub. Safety*, 953 F.3d 236, 242 (4th Cir. 2020) (quoting *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013)). "To determine if this exception applies, we consider 'whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiffs concede Deputy Commissioner Rollyson is not, at least in his official capacity, subject to a damage award from his personal assets. They clarify the nature of their putative official capacity claim against him as "seek[ing] to enjoin the Deputy Commissioner from disregarding the Fourteenth Amendment's guarantee of due process when it comes to that office's issuance of tax deeds on delinquent properties in the future." [ECF 57 at 3]. They assert this intention is apparent from their request in the Complaint for "[s]uch other and further relief in law or equity [it] deems just, proper, and appropriate." [ECF 1 at 17 ¶ H]. Further, the recently executed Affidavit of Ms. deWet avers Plaintiffs seek "an injunction ordering the Deputy Commissioner to

10

comply with the Fourteenth Amendment's guarantee of due process when issuing tax deeds for delinquent properties in the future." [ECF 57-1 at 2].

Deputy Commissioner Rollyson complains the request for prospective injunctive relief is tantamount to an unofficial pleading amendment. That much is true. He further contends the claim is absent from the operative Complaint. The Complaint pleads a remedy of "[d]eclaratory and injunctive relief pursuant to 42 U.S.C. § 1983 to void the illegal and unconstitutional tax deed of June 12, 2019, and declare Plaintiff[s] the continued lawful owner of the Property." [ECF 1 at 16 ¶ B]. Mr. Boer, however, conveyed title to the Property by Quitclaim Deed to Ms. Smith as part of their settlement. Deputy Commissioner Rollyson is thus correct that her restoration as owner of the Property renders moot her request to void the tax deed and declare her the lawful owner.  Her additional contentions designed to avoid this result are meritless.

Accordingly, the Court **GRANTS IN PART** Deputy Commissioner Rollyson's Motion for Summary Judgment and **DISMISSES** the official capacity claim against him.

## 2. Individual Capacity and Qualified Immunity

A state actor sued in his individual capacity for monetary damages generally qualifies as a suable "person" under Section 1983. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). But he may be entitled to qualified immunity. Qualified immunity is available only to those who do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Garrett v. Clarke*, 74 F.4th 579, 583 (4th Cir. 2023). Determining whether qualified immunity is appropriate involves a two-step inquiry. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, the court considers "whether a constitutional right would have been violated on the

facts alleged." *Id.* at 200. Next, the court examines whether that constitutional right was "clearly established" at the time of the alleged violation, *id.* at 202, meaning "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right," *Anderson v. Creighton*, 483 U.S. 635, 630 (1987), *See also Ray v. Roane*, 948 F.3d 222, 228 (4th Cir. 2020). In making the *Saucier* inquiry, the court has discretion to decide which of the two steps to address first, based on the facts and circumstances of the case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Omeish v. Kincaid*, 86 F.4th 546, 557 (4th Cir. 2023); *King v. Riley*, 76 F.4th 259, 265 (4th Cir. 2023).

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up); *see D.C. v. Wesby*, 583 U.S. 48, 63 (2018); *Garrett*, 74 F.4th at 584. "To determine if the right in question was clearly established, we first look to cases from the Supreme Court, th[e] Court of Appeals, or the highest court of the state in which the action arose." *Thompson v. Virginia*, 878 F.3d 89, 99 (4th Cir. 2017) (citing *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004)); *Franklin v. City of Charlotte*, 64 F.4th 519 (4th Cir. 2023). Absent "directly on-point, binding authority," courts may also consider whether "the right was clearly established based on general constitutional principles or a consensus of persuasive authority." *Booker v. S. C. Dep't of Corr.*, 855 F.3d 533, 543 (4th Cir. 2017); *Owens*, 372 F.3d at 279. In sum, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

To determine whether Deputy Commissioner Rollyson is entitled to qualified immunity, the Court first addresses whether he violated Ms. Smith's due process rights in issuing the tax deed to Mr. Boer when, prior to issuing the tax deed, he (1) did not send a copy of the

Notice to Redeem addressed to "Occupant" at the Property, (2) did not publish the Notice to Redeem, and (3) caused personal service to occur at the bad addresses. The Fourteenth Amendment provides "nor shall any state deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. "Before a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" *Jones v. Flowers*, 547 U.S. 220, 223 (2006) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)). "[W]hen mailed notice of a tax sale is returned unclaimed, the State must take *additional reasonable steps* to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* at 225 (emphasis added). It is further noted as follows:

> Due process does not require that a property owner receive actual notice before the government may take his property . . . . Rather, we have stated that due process requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

*Id.* at 226 (internal citation omitted).

"West Virginia Code § 11A-3-22(d) (2013) . . .  provides that, in order to comply with the redemption notice requirements for Class II property, in addition to other notice requirements set forth in W. Va. Code § 11A-3-22, notice must also be addressed to 'Occupant' and mailed to the property." Syl. pt.  1, *Archuleta v. US Liens, LLC*, 240 W. Va. 519, 519, 813 S.E.2d 761, 761 (2018). "W. Va. Code § 11A-3-19 provides that a property owner must be served notice of the right to redeem property as outlined under W. Va. Code § 11A-3-22." *Id.* at 523, 813 S.E.2d at 765; W. Va. Code § 11A-3-19 (2018) (The purchaser of a tax lien shall "[p]repare a list of those to be served with notice to redeem and request the State Auditor to prepare and serve the notice as provided in § 11A-3-21 and § 11A-3-22."). Section 11A-3-22(d) provides in relevant

part: "If the address of a person entitled to notice, whether a resident or nonresident of this state, is unknown to the purchaser and cannot be discovered by due diligence on the part of the purchaser, the notice shall be served by publication." W. Va. Code § 11A-3-22 (2013).

"The right of a landowner to have the statutory procedures complied with before he is deprived of his land is fundamental." *Archuleta*, 240 W. Va. at 525, 813 S.E.2d at 767 (quoting *Morgan*, 177 W. Va. at 106, 350 S.E.2d at 734) (cleaned up). The duty of the Auditor's Office to mail notice to the "Occupant" of a Class II property "is not imposed until a tax purchaser complies with its duty under W. Va. Code § 11A-3-19 to provide the State Auditor with a list of names and addresses that, when applicable, should include 'Occupant' as a named entity to receive notice." *Id*. "[T]he State Auditor does not have a duty to hazard a guess in every tax delinquency proceeding as to when notice must be addressed and mailed to 'Occupant.' West Virginia Code § 11A-3-19 imposed the duty on the [tax lien purchaser] to inform the State Auditor that notice to 'Occupant' was also required." *Id.*

> In addition to finding that W. Va. Code § 11A-3-19 requires the Respondent to add "Occupant" to the list of names submitted to the State Auditor, we also find that W. Va. Code § 11A-3-22(d) requires the same. We understand that, read in isolation, W. Va. Code § 11A-3-22(d) does not expressly state that the tax purchaser is required to inform the State Auditor that notice must be addressed to "Occupant." However, such a requirement is implicit in statute's purpose of protecting the rights of property owners.

*Id.* at 526 n. 15, 768 n. 15.

Respecting the first issue, as noted, *West Virginia Code* section 11A-3-22(d) required Deputy Commissioner Rollyson to "forward a copy of the notice sent to the delinquent taxpayer by first class mail, addressed to 'Occupant', to the physical mailing address for the subject property." Deputy Commissioner Rollyson admits he did not do so. He responds this duty is not imposed on him, however, until the tax purchaser (here, Mr. Boer) complies with his duty under

*West Virginia Code* section 11A-3-19. *Archuleta*, 240 W. Va. at 525, 813 S.E.2d at 767. Here, Mr. Boer failed to provide Deputy Commissioner Rollyson with a list of names and addresses that, "*when applicable*, should include "Occupant" as a named entity to receive notice." *Id.* (emphasis added); [ECF 47-3 at 2].

The Supreme Court of Appeals of West Virginia has found that *West Virginia Code* section 11A-3-22(d) requires the "tax purchaser . . . to inform the State Auditor that notice must be addressed to 'Occupant.'" *Archuleta*, 240 W. Va. at 526 n.15, 813 S.E.2d at 768 n.15. Upon review of the State Auditor's Office Notice to Redeem Form completed by Mr. Boer for the Property, none of the four addresses provided listed the recipient of the notice as "Occupant." [ECF 47-3 at 2]. Therefore, due to Mr. Boer's failure to comply with his duty under *West Virginia Code* sections 11A-3-19 and 22(d), there was no clearly established legal duty for Deputy Commissioner Rollyson to send notice addressed to "Occupant."

Respecting the second issue, Deputy Commissioner Rollyson contends he did not have a duty to compel Mr. Boer to publish the Notice to Redeem. As discussed in the preceding paragraph, however, at no point was Deputy Commissioner Rollyson requested by Mr. Boer to serve notice by publication. *West Virginia Code* section 11A-3-22(d) does not explicitly impose a duty on the Auditor's Office to ensure notice by publication occurs in such an instance. *West Virginia Code* section 11A-3-22(d) states in pertinent part:

> If service by publication is necessary, publication shall be commenced when personal service is required as set forth in this section and a copy of the notice shall at the same time be sent by certified mail, return receipt requested, to the last known address of the person to be served.

W. Va. Code § 11A-3-22(d). Read with the Supreme Court of Appeals' holding in *Archuleta*, however, the duty of the Auditor's Office does not mature until prompted by the tax lien purchaser to serve notice by publication. *Archuleta*, 240 W. Va. at 526 n.15, 813 S.E.2d at 768 n.15.

Additionally, when comparing the Notice to Redeem Form submitted by Mr. Boer for the Property and the Union Lot, Mr. Boer selected publication for the Union Lot and the Auditor's Office published notice in the *Bluefield Daily Telegraph*. [ECF 51-5, 51-10]. Mr. Boer did not similarly select publication for the Property. [*Id.*].[2]

Respecting the third issue, as early as December 12, 2017, a search of the Mercer County Clerk's Office records would have revealed the correct address for Ms. Smith. If a taxpayer is unreachable during the assessment and collection process, one would reasonably expect him or her to eventually appreciate the need to provide correct contact information to the taxing authority. Mr. Boer thus would have been reasonably expected, on October 29, 2018, to make a new check of those central, public records to ascertain if new contact information was available. Mr. Boer, however, made no such check. He instead provided Deputy Commissioner Rollyson with four other potential addresses. After Deputy Commissioner Rollyson mailed the Notices to Redeem to those four addresses, however -- and they were promptly returned as undeliverable, unclaimed, or not subject to forwarding -- it would have been both reasonable and, frankly, an exceptionally simple matter, to use the January, February, and April 2019 follow-up letters to Mr. Boer to require

---

[2] Moreover, as to the occupant and publication obligations, not every single statutory duty under state law is imbued with a due process guarantee. *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("[T]he mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution. '[A] mere error of state law,' we have noted, 'is not a denial of due process.'") (citations omitted)); *Gryger v. Burke*, 334 U.S. 728, 731 (1948); *Engle v. Isaac*, 456 U.S. 107, 121 & n. 21 (1982); *Riccio v. County of Fairfax*, 907 F.2d 1459, 1466 (1990) ("The Due Process Clause regulates the manner in which a state deprives its citizens of interests in life, liberty, and property. It is well established that the mere existence of a state rule does not necessarily create an interest protectable by the Due Process Clause, and that, therefore, a state does not necessarily violate the Constitution every time it violates one of its rules."); *Lazaridis v. Wehmer*, 591 F.3d 666, 671 n. 6 (3rd Cir.2010) ("Although Lazaridis asserts due process violations, we do not construe the alleged misapplication of state law as violative of substantive federal due process. The constitution does not guarantee that the decision of state courts shall be free from error.").

The Court is unaware of any case suggesting the occupant and publication duties rise to the level of being protected by the Fourteenth Amendment. The duties are thus necessarily not of the clearly established variety under *Harlow* and its progeny.

that he check the Mercer County Clerk's Office records anew for Ms. Smith's updated contact information. But Deputy Commissioner Rollyson failed to do so.

It is worth pausing at this point to note that our Court of Appeals, in *Plemons v. Gale*, 396 F.3d 569, 573 (4th Cir. 2005), observed many years ago that where it is "undisputed that the notice sent to Occupant at the property's mailing address was returned as undeliverable, it was a reasonable assumption that further investigation at that address would be unsuccessful." *Id.* at 577. Two other observations from the decision in *Plemons* are worth noting: (1) "[I]t is, at the very least, reasonable to require examination (or re-examination) [by the tax lien purchaser] of all available public records when initial mailings have been promptly returned as undeliverable," *id.*, and (2) a court must answer "whether [the owner of records'] proper address would have been ascertainable from such a search," *id.* at 578.

While Deputy Commissioner Rollyson commendably required personal service following the mailing failures, Mr. Boer did not search the Mercer County Clerk's Office records as would have been incumbent upon him under *Plemons*. He instead provided to Deputy Commissioner Rollyson four more addresses for personal service upon Ms. Smith, knowing three of those addresses had previously been the subject of returned mailings. Importantly, at this point, Ms. Smith's Kentucky PO Box had been on file with the Mercer County Clerk's Office for one and a half years.

Following the decision in *Plemons*, it was a natural, reasonable, practicable, minimally troublesome, and constitutionally mandated step for Deputy Commissioner Rollyson to demand that Mr. Boer search the Mercer County Clerk's Office records anew in aid of providing notice reasonably calculated to actually reach Ms. Smith before her property was spirited away by the taxing authorities. Although that duty has not heretofore been imposed on Deputy

17

Commissioner Rollyson by statute or in any decision from the Supreme Court, our Court of Appeals, or the Supreme Court of Appeals of West Virginia, the Court has little difficulty concluding that due process requirement was, and in the future will be, essential. Inasmuch as Ms. Smith was deprived of the process due her under the Fourteenth Amendment, the April 1, 2019, tax deed granted by Deputy Commission Rollyson is void *ab initio*. Her heirs are thus free to convey in the future that same title and associated warranties Ms. Smith held prior to the tax deed being given to Mr. Boer by Deputy Commissioner Rollyson.

Moving to the second step in the qualified immunity analysis, the Court examines whether the constitutional duty established today was "clearly established" on April 1, 2019. That duty is understood as follows: a deputy commissioner, as a final step in the redemption notice process, must require one seeking a tax deed to make a final search of the county tax records for new address information of the previously unreachable owner. The Court must thus determine if the contours of the aforementioned right were sufficiently clear on April 1, 2019, that a reasonable official would have understood it and thus be chargeable in damages for failing to observe it.

As noted at the outset, the Supreme Court in *Jones* declined to provide the steps one must take to satisfy due process under these circumstances. *Id.* at 234. "[I]t is not our responsibility to prescribe the form of service that the government should adopt." *Id.* (quoting *Greene v. Lindsey*, 456 U.S. 444, 455 n. 9 (1982)) (cleaned up). Indeed, our Court of Appeals has only opaquely held that when notice fails at the first effort, "'consideration should be given to the practicalities of the situation' in each case." *Plemons*, 396 F.3d at 573 (citing *Tulsa Pro. Collection Servs., Inc. v. Pope,* 485 U.S. 478, 489–90 (1988)). The uncertainty respecting the process due is compounded by *Mullane*, which "instructs that 'all the circumstances' of a case, including its 'practicalities and peculiarities,' must be considered in determining the constitutional sufficiency

18

of notice." *Id.* (citing 339 U.S. at 314).

It is true that in an unpublished decision our Court of Appeals denied Deputy Commissioner Rollyson qualified immunity when he issued a tax deed tainted by a notice failure. *O'Neal v. Rollyson*, 729 F. App'x 254 (4th Cir. 2018). That case, however, is quite different than this one. The circumstances in *O'Neal* are summarized as follows:

> Rollyson does not dispute that he never informed the purchaser that the notices sent to the designated post office box were returned or that he failed to send notice addressed to "Occupant" as required by the statute. Rollyson further does not dispute that, knowing that the attempted notices were unsuccessfully sent, he transferred the Property deed to the purchaser anyway.

*O'Neal,* 729 F. App'x at 255. In this case, after the first round of mailings failed, Deputy Commissioner Rollyson informed the tax lien purchaser of the notice failure and then, additionally, required (1) more address information from the tax lien purchaser, and (2) directed attempts at personal service, which ultimately failed. As the record reflects, he did so in an earnest effort to comply with the unpublished decision in *O'Neal*. There is nothing in *O'Neal* that required him to force Mr. Boer to undertake a renewed search of the Mercer County Clerk's Office records. No reasonable official in his position would thus have understood the decision in *O'Neal* to reach that far.

The same is true of the Supreme Court of Appeals' decisions in *Mason v. Smith*, 233 W. Va. 673, 760 S.E.2d 487 (2014), and *Lilly v. Duke,* 180 W. Va. 228, 376 S.E.2d 122 (1988), both of which having been decided under a now-repealed statutory scheme under which the Deputy Commissioner of Forfeited and Delinquent lands had no notice obligations or conveyance authority.

In view of the utter absence of direction respecting what was expected of a reasonable deputy commissioner under the particular factual circumstances here presented, it is

important to take note of the extraordinarily forgiving nature of the qualified immunity rubric:

> The doctrine of qualified immunity "balances two important interests -- the need to hold public officials accountable *when they exercise power irresponsibly* and the need to shield officials from harassment, distraction, and *liability when they perform their duties reasonably*." To that end, qualified immunity protects . . . officers from personal liability for civil damages stemming from "*bad guesses in gray areas and ensures that they are liable only for transgressing bright lines*."
>
> Because government officials *cannot "reasonably be expected to anticipate subsequent legal developments*," the right must have been clearly established at the time an official engaged in a challenged action.

*Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 468–69 (4th Cir. 2013).

In sum, a reasonable deputy commissioner confronted with the circumstances faced by Deputy Commissioner Rollyson could not have been expected to forecast the duty here imposed, which appears nowhere in the statute governing his authority nor decisional law. At most, in not requiring Mr. Boer to return to the Mercer County Clerk's Office, Deputy Commissioner Rollyson made "a bad guess in a gray area" and certainly "transgressed" no "bright lines." In the legal landscape confronting him on the day he issued the deed to Mr. Boer, he in no way "exercise[d]" his "power irresponsibly." Consequently, he is entitled to qualified immunity.

Accordingly, the Court **GRANTS** Deputy Commissioner Rollyson's Motion for Summary Judgment on qualified immunity grounds.

### III.

Accordingly, the Court **GRANTS** Deputy Commissioner Rollyson's Motion for Summary Judgment [**ECF 47**], to the extent he seeks qualified immunity and **DENIES** it without prejudice as to its residue. The Court additionally **DENIES** as moot Plaintiffs' Motion for Summary Judgment.

Both the official and individual capacity claims having been adjudicated, it is **ORDERED** that this case be, and hereby is, **DISMISSED** and **STRICKEN** from the docket.

The Clerk is directed to send a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTER:        May 9, 2024

Frank W. Volk
United States District Judge